STATE EX REL. CHARLES M. HAY, CLAXTON E. ALLEN, HAROLD T. JOLLEY AND ADOLPH C. WIGET, CONSTITUTING THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF ST. LOUIS, MISSOURI, AND SILAS W. CARR, CHARLES J. DOLAN, AND IRVING I. PICKETT, ASSISTANTS OF SAID BOARD, RELATORS, v. LOUIS NOLTE, COMPTROLLER AND JOHN J. DWYER, TREASURER OF THE CITY OF ST. LOUIS, RESPECTFULLY, RESPONDENTS.—141 S. W. (2d) 152.

St. Louis Court of Appeals. Opinion filed June 4, 1940.

*Edgar H. Wayman* and *George D. Chopin* for respondents.

*Douglas W. Robert* for relators.

BENNICK, C.—This is an original proceeding in *mandamus*, whereby relators, the members of the Board of Election Commissioners of the City of St. Louis and three of their duly appointed additional assistants, seek to have the court order and direct that respondents, the Comptroller and Treasurer, respectively, of the City of St. Louis, shall issue unqualified warrants for, and pay to, such three additional assistants, the amounts of salaries or compensation alleged to be due them as specified in certain pay rolls which have heretofore been prepared and certified by the board.

The whole controversy turns upon the interpretation of section 81 (Laws 1937, p. 276) of an act passed by the Fifty-ninth General Assembly (Laws 1937, p. 235), providing for permanent registration of voters and for the holding of elections in all cities of this State of 600,000 or more inhabitants. The act provides, among other things, for the creation of a Board of Election Commissioners for such cities and for the appointment of the board's assistants permanent and otherwise; and then, in Section 81, makes provision for their salaries or compensation, as follows:

"The salaries of the Election Commissioners and assistants shall be paid out half by any such City and one-half by the County in which such City is located, or if such City is not within a county, then such salaries shall be paid in full by such City. The members of such Board shall receive a salary of three thousand ($3,000) dollars per year each, payable monthly; the Chief Clerk shall receive a salary of three thousand ($3,000) dollars per year payable monthly; other assistants not exceeding seven in number, shall each receive salaries as the Board may determine, not to exceed twenty-four hundred ($2400) dollars per year, payable monthly, *and all additional assistants, if any, shall receive such salaries as the Board may determine, not to exceed six ($6) dollars per day.* Precinct judges and clerks shall receive as pay six ($6) dollars for each day or part of day while on duty, except pay shall be allowed for those days mentioned in this Act."

The question in issue, incidentally, is whether, under the above section of the act, additional assistants employed by the board are to be paid on the basis of calendar days over the total period of

time employed, as relators contend, or whether, on the contrary, they are to be paid on a *per diem* basis for each day on which they actually perform services, which is the position taken by respondents.

The facts are that at a meeting of the Board of Election Commissioners on February 1, 1940, the compensation of the three additional assistants in question was fixed, "for added responsibilities and duties," at the rate of $6 "per calendar day," effective from and after the date of the meeting, and subject to termination by the board.

On February 15, 1940, the semi-monthly pay roll for the assistants employed by the board was prepared and certified to the respondent Comptroller, which pay roll, as regards the three additional assistants in question, showed that Carr and Dolan were each entitled to the sum of $90 for fifteen calendar days at the rate of $6 a day, and that Pickett was entitled to the sum of $84 for fourteen calendar days at the rate of $6 a day. A warrant was thereupon prepared by the comptroller's office for the total amount of the pay roll, but before delivering the same to the respondent Treasurer, the Comptroller made notations opposite the names of such three additional assistants to the effect that their compensation should not be paid, and in obedience to such notations, the Treasurer refused to pay the same.

On February 29, 1940, the pay roll was again prepared by the board, showing each of the three additional assistants entitled to the sum of $84 for fourteen calendar days at the rate of $6 a day, and again, in obedience to identical notations made by the Comptroller, the Treasurer refused to pay the same.

Thereafter this proceeding was instituted to have a judicial interpretation of section 81, *supra,* insofar as it provides that "all additional assistants, if any, shall receive such salaries as the Board may determine, not to exceed six ($6) dollars per day." If such language is to be interpreted to mean that additional assistants employed by the board are to be paid on a calendar basis over the total period of time employed, irrespective of the intervention of Sundays, legal holidays, and other days on which, for one reason or another, no services may be rendered, then the peremptory writ should issue; but if it is to be taken as providing for the payment of additional assistants upon a *per diem* basis for only those days on which services are actually performed, then respondents Comptroller and Treasurer are correct in their position, and the peremptory writ should be denied.

Under the old law, which the Act of 1937 superseded, it was provided (Sec. 10654, R. S. Mo. 1929 [Mo. Stat. Ann., sec. 10654, p. 3919]) that "all additional assistants, if any, shall receive not to exceed six dollars per day for the time actually employed." This language was very definite, and concededly left no room for doubt but that additional assistants employed by the board were to be

paid on a *per diem* basis, that is, for only those days on which services were actually performed.

Relators argue, therefore, that when the Legislature, in making provision for the compensation of additional assistants employed under the new law, omitted from the act the qualifying phrase, "for the time actually employed," which had appeared in the old law, it must have done so with the intent that additional assistants were no longer to be limited to compensation for only those days on which services were actually performed, but that thenceforth they were to be put in the category of salaried employees, whose compensation would be paid over the total period of calendar days employed, though restricted to a maximum of $6 a day so far as the basic rate of pay was concerned.

Respondents insist, on the other hand, that the new law does not, in terms, effect any change in the *status* of additional assistants as mere *per diem* employees, and that the language used by the Legislature, even without the inclusion of the phrase, "for the time actually employed," admits of no legitimate and rational construction but that additional assistants are still to receive pay only for those days on which they render services for the board.

Giving the language used its ordinary meaning, and reading it in the light of its context and the evident purpose sought to be accomplished by the Legislature, we cannot escape the conclusion that respondents are correct in their viewpoint, and that additional assistants are entitled to be paid for only those days on which their services are actually performed.

One important consideration which is not to be lost sight of is the fact that the Act of 1937 is not an amendment of the old law, but is instead an entirely new act, purposely intended to supersede the old, and expressly repealing all acts or part of acts contrary to, in conflict with, or inconsistent with the provisions of the new law insofar as they might affect cities coming within the comprehension of the act. Consequently, in the construction of the new law, any variation in its language from that of the old law is not entirely of the same significance as would be the case if the present act were merely an amendment of the former, with any change in language necessarily evidencing a deliberate change in legislative intent; and the old law, and those which precede it, are therefore now chiefly of importance only insofar as they may evidence a definite and continuing legislative policy with respect to the compensation of additional assistants, from which policy there is no reason to believe that the Legislature intended to depart in the passage of the Act of 1937.

In Section 3 of the act (Laws 1937, p. 238), after providing for the creation of the Board of Election Commissioners and the appointment of a Chief Clerk, it is provided that the board shall also have under its supervision as many employees as may be necessary "to

accurately perform the work," and that the board "shall also have the right to employ such assistants from time to time as may be necessary to promptly and correctly perform the duties of the office." Thus the act not only provides for permanent assistants to the board, but, in contemplation of periodical increases in the amount of the board's work, occurring principally, of course, before and after elections, wisely makes provision for the employment, in the board's discretion, of still further or additional assistants "from time to time," whose *status* is clearly intended to be but temporary in character. So it is, in conformity with the idea expressed in section 3, that in section 81, which provides how the board's assistants shall be paid, it is provided that the permanent assistants, not exceeding seven in number, shall receive salaries fixed on a permanent basis, that is, not to exceed $2400 a year, payable monthly; while in the case of additional or temporary assistants who may be employed "from time to time" over periods long or short, it is provided that their pay shall be fixed on a corresponding temporary or *per diem* basis, that is, not to exceed $6 a day.

In seeking to give effect to the legislative intent in the enactment of a statute, the court must ever take into account extraneous circumstances which the Legislature may fairly be supposed to have had in mind regarding the practical working out of the act, and the case at bar furnishes an excellent example for the application of such rule of interpretation.

For instance, it is shown by the stipulation as to evidence which has been filed by the parties, that in 1939, the average number of additional assistants employed by the board each month was twenty-four, except for the months of February, March, and April, immediately preceding and following the aldermanic election of that year, when the number of additional assistants rose to seventy-five, one hundred six, and one hundred nineteen, respectively.

While the act gives the board a discretion in fixing the salaries of its additional assistants subject to the maximum limitation of $6 a day, it gives it no discretion with respect to putting some of them upon a calendar, and the others upon a *per diem*, basis; and if some of its additional assistants are to receive pay for days on which no services are performed, then all are entitled to be similarly regarded so far as the determination of the period of their employment is concerned. Thus it is to be seen that the question is not merely one of whether the three additional assistants who are relators herein shall receive pay for Sundays, legal holidays, and other days on which they perform no services for the board, but of whether all additional assistants shall be paid upon such basis; and we have no doubt that it was in contemplation of this very situation, and to avoid such result, that the Legislature prescribed the day as the unit of time for which additional assistants should be paid, recognizing the occasional and

temporary character of their employment, and intending that the fact of services rendered should be the foundation of their right to receive pay for any particular day.

Indeed it would appear that the board itself must have had misgivings about the right of the ordinary additional assistant to be paid upon the basis of calendar days, since in undertaking to fix the compensation of the three additional assistants in question upon such basis, it assigned as the reason therefor the ''added responsibilities and duties'' which had been imposed upon them. Conceding the good intentions and high purposes of the board, neither it nor this court has the power to read into the statute a meaning or direction contrary to that expressed therein; and if the proper conduct of the board's affairs seems to make it expedient that these particular assistants should be given a degree of permanency in their employment, and an increase in compensation, over and beyond that accorded additional assistants in general, the remedy is by a request to the Legislature for such an amendment to the act as will make that result legally possible, and not by an insistence in this court for an interpretation of the act which is neither expressed nor implied in the language used.

Relators also have something to say in their brief about the significance of the fact that in the Act of 1937, the compensation to be paid additional assistants is referred to as ''salaries,'' thus indicating, so they argue, a legislative intent for something in the nature of a more permanent employment in the case of additional assistants than would be understood by mere *per diem* compensation.

There is no doubt that the term ''salary'' or ''salaries'' is frequently so used, though not invariably so, and it is of interest to note that such distinction has never been observed by the Legislature in the enactment of former election laws preceding and antedating the law in question. Both sides to the controversy refer in their briefs to previous statutes in which provision was made for assistants to receive a ''salary'' of one figure or another ''for the time actually employed;'' and since the compensation so provided for was unquestionably upon a *per diem* basis notwithstanding the employment of the term ''salary'' in reference to it, no special significance is to be attached to the fact that the Legislature, in section 81, *supra,* saw fit to use the word ''salaries'' when referring to the compensation that additional assistants should receive.

In all former election laws relating to the employment of additional assistants to the board, it was distinctly provided that compensation was only to be paid ''for the time actually employed;'' and we think it is inconceivable that if the Legislature, in the passage of the act of 1937, had intended to depart from such fixed policy of long standing, it would not have made its intention entirely clear. On the contrary, while for some reason omitting the qualifying phrase that it had

formerly employed, it nevertheless used language which, when given its ordinary meaning, indicates the same basis for computing the total amount of compensation to be paid. Compensation payable at the rate of so much a day ordinarily means pay for a day's services, and there is nothing in the language used in the act to reflect a legislative intent that additional assistants shall be compensated for days on which they perform no services.

It follows that the alternative writ of *mandamus* heretofore issued by this court should be quashed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The alternative writ of *mandamus* heretofore issued by this court is, accordingly, quashed. *Hughes, P. J.,* and *Becker* and *McCullen, JJ.,* concur.